IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| BRANDON LEE RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-076 |
| | ) | |
| DW MR. WILCOX; DW MS. STEWART; | ) | |
| WARDEN ANDREW MCFARLIN; | ) | |
| DOCTOR DAVID CHANEY; SGT. MS. | ) | |
| MOORE; GANG UNIT MR. BROWN; | ) | |
| UNIT MANAGER MS. HUNT; NURSE | ) | |
| GRAY; OFFICER SIKES; and MH MS. | ) | |
| JACOBS, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, currently incarcerated at Telfair State Prison ("TSP"), in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.  **SCREENING THE COMPLAINT**

A.  **BACKGROUND**

In his complaint, Plaintiff names as Defendants:  (1) DW Mr. Wilcox, (2) DW Ms. Stewart, (3) Warden Andrew McFarlin, (4) Doctor David Chaney, (5) Sgt. Ms. Moore, (6) Gang Unit Mr. Brown, (7) Unit Manager Ms. Hunt, (8) Nurse Gray, (9) Officer Sikes, and (10)

MH Ms. Jacobs.  (Doc. no. 1, p. 1.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On July 28, 2023, Plaintiff was threatened and physically assaulted by an inmate named Oscar Chavez.  (Id. at 5.)  Chavez hit Plaintiff on the head and knees with a metal pole, stabbed him, and broke Plaintiff's right hand during the altercation.  (Id.)  An unknown officer responded and Plaintiff was sent to Dodge County Hospital for medical attention.  (Id.)  Plaintiff received an MRI and stitches for his head injuries and had X-rays taken of his right hand and right leg.  (Id.)  Plaintiff was advised that his hand was broken and that he needed a cast or a referral to a specialty doctor.  (Id.)  Plaintiff then returned to TSP and was placed in an observation strip cell.  (Id.)

On July 31, 2023, Plaintiff was treated by Defendant Doctor David Chaney at TSP.  (Id. at 6.)  Defendant Chaney told Plaintiff that he could not do anything about Plaintiff's injuries until he received the X-rays from Dodge County Hospital and that Plaintiff would get medications prescribed by hospital staff soon.  (Id.)  Defendant Chaney then explained that he should have the hospital's report within four to six weeks, after which point Defendant Chaney could refer Plaintiff to the appropriate specialty doctor.  (Id.)

Plaintiff submitted sick calls requesting follow-up treatment for his broken hand multiple times and was denied relief.  (Id.)  Plaintiff also spoke with Defendant Nurse Ms. Gray multiple times, but Defendant Gray only told Plaintiff that she would check on the status of his treatment without providing additional medical care.  (Id.)

On August 1, 2023, Plaintiff was seen by a mental health doctor who prescribed him medication to treat PTSD, depression, and other mental health needs.  (Id.)

Between July 31 and August 5, 2023, Plaintiff issued handwritten letters to Defendants DW Mr. Wilcox, Sgt. Ms. Moore, Unit Manager Ms. Hunt, and Gang Unit Mr. Brown requesting safety and reporting names of individuals Plaintiff believed would harm him. (Id.)

On August 16, 2023, Plaintiff was moved to a cell with a roommate. (Id.) On August 18, 2023, Plaintiff filed a grievance for "lack of security." (Id.) On August 21, 2023, Plaintiff filed another grievance for inadequate medical care. (Id.) On August 28, 2023, Plaintiff filed a "PREA Emergency Grievance" related to an orderly using sexually explicit speech towards Plaintiff a few days prior. (Id.) The August 28th grievance was also signed by Ms. Howell and was given to the officer in charge. (Id.) Plaintiff also submitted a handwritten PREA letter on an unspecified date, alleging that the orderly used threatening language towards Plaintiff, causing Plaintiff to fear for his life and safety, on August 28, 2023. (Id.) Plaintiff is also scared for his life because he has an active PREA case pending for sexual abuse and harassment. (Id. at 6-7.)

Plaintiff requests to transfer to a different prison, to be placed in a single person cell, and to receive proper medical treatment. (Id. at 7-8.)

## B.    DISCUSSION

### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc.,

366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

2.      **Plaintiff Fails to State a Claim Upon Which Relief May Be Granted Because He Did Not Exhaust Administrative Remedies**

a.      **The Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner

fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Porter, 534 U.S. at 524.

### b.      Administrative Grievance Procedure

The administrative grievance procedure is governed by the version of the Georgia Department of Corrections ("DOC") Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1]  The Statewide Grievance Procedure is available to all offenders in the DOC, and if a grievance is filed in reference to a different facility than that of the offender's current place of incarceration, the grievance coordinator at the current facility notifies the grievance coordinator at the originating facility for screening and processing.  PN 227.02 §§ I and  IV(E)(5).  "Facilities

---

[1]  DOC policies cited herein are publicly available on the DOC web site.   See https://gdc.georgia.gov; *follow* link for Policies & Procedures and then Facilities Division; *click on* link for desired PN (last visited October 30, 2023).

shall continue to screen and process grievances of Offenders who were subsequently released or transferred from the facility after the grievance was filed." Id. § IV(E)(8). Once the warden's response is entered by the originating facility, the prisoner will be notified at the current facility via Kiosk/Tablet, or if not accessible, then notification will be done in writing. Id. § IV(E)(5).

The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. Id. § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. and § IV(C)(1)(e)(ii)(2). Good cause is defined as "[a] legitimate reason involving unusual circumstances that prevented the Offender from time filing a grievance." Id. § III(H). "Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the

date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### c.      Plaintiff's Failure to Exhaust

In his complaint dated September 5, 2023, Plaintiff states he filed grievances but was "still going [through] the grievance process" and was "waiting on grievances to come back." (Doc. no. 1, pp. 3-4.)  Having failed to receive a response to his original grievance in less than the allotted forty days for the Warden to respond, Plaintiff executed and filed his pleading that launched this case.  Furthermore, the face of Plaintiff's pleading makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit.  That is, Plaintiff improperly short-circuited the grievance process not only by filing his lawsuit prior to the expiration of the time allowed for the Warden to respond, but also because he did not file an appeal, even if the time for the Warden to respond to the original grievance had expired.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate

in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not waiting for a response to his original grievance or filing an appeal of any unsatisfactory response would defeat the aims of PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not wait

for a response to his original grievance, let alone file a central office appeal regarding any potential mishandling of the original grievance.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted.  See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (per curiam) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

### 3. The Complaint Should Also Be Dismissed Because Plaintiff Failed to Truthfully Disclose His Prior Filing History

The standard form on which Plaintiff submitted his claims, "Questionnaire for the Prisoners Proceeding Pro Se Under 42 U.S.C. § 1983," requires, inter alia, that prisoner plaintiffs disclose whether (1) they have filed any lawsuit, other than a direct criminal appeal or habeas action, while detained; and, (2) any federal suit in which they were permitted to proceed IFP was dismissed on the ground that it was frivolous, malicious, or failed to state a claim.  (Doc. no. 1, pp. 2-3.)  The form cautions that failure to disclose all prior civil cases may result in dismissal of the instant case and specifically states if the plaintiff is unsure of any prior cases, that fact must be disclosed.  (Id. at 2.)

Here, Plaintiff identified at least one prior lawsuit, but he did not identify or otherwise list any of the required information about the cases beyond the named defendant.  (See id. at 2.)  Moreover, Plaintiff stated he had not had any prior federal lawsuit dismissed on the ground it was frivolous, malicious, or failed to state a claim.  That answer is false, as Plaintiff filed a

lawsuit against a different defendant than the one identified that was dismissed for failure to state a claim.  See Ramirez v. Smith, Civil Action No. 4:19-00067, doc. no. 7 (N.D. Ga. May 3, 2019).  Moreover, Plaintiff commenced this case before filing his complaint in the instant case, meaning he had every chance to fully disclose the information related to his prior filing history.

The Eleventh Circuit has approved of dismissing a case based on dishonesty in a complaint.  In Rivera, the Court of Appeals reviewed a prisoner plaintiff's filing history for the purpose of determining whether prior cases counted as "strikes" under the PLRA and stated:

> The district court's dismissal without prejudice in Parker is equally, if not more, strike-worthy.  In that case, the court found that Rivera had lied under penalty of perjury about the existence of a prior lawsuit, Arocho.  As a sanction, the court dismissed the action without prejudice, finding that Rivera "abuse[d] the judicial process[.]"

Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007); see also Sears v. Haas, 509 F. App'x 935, 936 (11th Cir. 2013) (*per curiam*) (affirming dismissal of complaint where prisoner plaintiff failed to accurately disclose previous litigation); Redmon v. Lake Cnty. Sheriff's Office, 414 F. App'x 221, 223, 226 (11th Cir. 2011) (*per curiam*) (affirming dismissal, after directing service of process, of amended complaint raising claims that included denial of proper medical care and cruel and unusual punishment for placement in a "restraint chair" and thirty-seven days of solitary confinement upon discovering prisoner plaintiff failed to disclose one prior federal lawsuit); Young v. Sec'y Fla. for Dep't of Corr., 380 F. App'x 939, 940-41 (11th Cir. 2010) (*per curiam*) (affirming dismissal of third amended complaint based on a plaintiff's failure to disclose prior cases on the court's complaint form); Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538368

(N.D. Fla. Mar. 21, 2012) (dismissing case alleging deliberate indifference to serious medical needs where plaintiff failed to disclose new case commenced in interim between filing original complaint and second amended complaint), *adopted by* Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538336 (N.D. Fla. May 2, 2012).

Indeed, "pursuant to 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an IFP action if the court determines that the action is 'frivolous or malicious.'" Burrell v. Warden I, 857 F. App'x 624, 625 (11th Cir. 2021) (*per curiam*) (citing 28 U.S.C. § 1915(e)(2)(B)(i)). "An action is malicious when a prisoner misrepresents his prior litigation history on a complaint form requiring disclosure of such history and signs the complaint under penalty of perjury, as such a complaint is an abuse of the judicial process." Id. The practice of dismissing a case as a sanction for providing false information about prior filing history is also well established in the Southern District of Georgia. See, e.g., Williamson v. Cnty. of Johnson, GA, CV 318-076, 2018 WL 6424776 (S.D. Ga. Nov. 5, 2018), *adopted by* 2018 WL 6413195 (S.D. Ga. Dec. 6, 2018); Brown v. Wright, CV 111-044 (S.D. Ga. June 17, 2011); Hood v. Tompkins, CV 605-094 (S.D. Ga. Oct. 31, 2005), *aff'd*, 197 F. App'x 818 (11th Cir. 2006) (*per curiam*). Plaintiff's failure to disclose all information related to his prior case discussed above was a blatantly dishonest representation of his prior litigation history.

Therefore, even if the case were not subject to dismissal because of Plaintiff's failure to exhaust administrative remedies, the case should be dismissed without prejudice as a sanction for Plaintiff's dishonesty. [2]

---

[2] Plaintiff's claims in the instant case allege issues with multiple Defendants dating back to July 2023. (Doc. no. 1.) Thus, Plaintiff may still timely re-file his § 1983 claims after exhausting his administrative remedies, should he choose to do so. See Kline v. Warden, No. 21-12620-F, 2021 WL

## II.      CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and as a sanction for Plaintiff providing dishonest information about his filing history, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 31st day of October, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

9203812, at *2 (11th Cir. Dec. 22, 2021) (*per curiam*) (affirming dismissal without prejudice as sanction for dishonest filing history where plaintiff may timely re-file claims).